# EXHIBIT A

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| AFTER II MOVIE, LLC; BODYGUARD PRODUCTIONS, INC.; HITMAN 2 PRODUCTIONS, INC.; LHF PRODUCTIONS, INC., MILLENNIUM FUNDING, INC., MILLENNIUM IP, INC.; MON, LLC; NIKOLA PRODUCTIONS, INC.; OUTPOST PRODUCTIONS, INC.; RAMBO V PRODUCTIONS, INC.; VENICE PI, LLC; VOLTAGE HOLDINGS, LLC; WONDER ONE, LLC; DALLAS BUYERS CLUB, LLC;  HANNIBAL MEDIA, INC., BADHOUSE STUDIOS, LLC; THE GUARD PRODUCTIONS, LTD; JOLT PRODUCTIONS, INC.; TIL PRODUCTIONS, INC.; and SCREEN MEDIA VENTURES, LLC, | § § § § § § § § § § § § § § § § § § § | **Case No.:** 1:21-cv-709-RP (Copyright)  **SECOND AMENDED COMPLAINT; EXHIBITS "A"-"D"; DECLARATION OF JOSHUA LEE**  **(1) CONTRIBUTORY COPYRIGHT INFRINGEMENT (2) DMCA VIOLATIONS (3) JURY TRIAL DEMANDED** |
| Plaintiffs, | § § § | |
| vs. | § § | |
| GRANDE COMMUNICATIONS NETWORKS, LLC | § § § | |
| Defendant. | § § § § § | |

## **SECOND AMENDED COMPLAINT**

Plaintiffs AFTER II MOVIE, LLC, BODYGUARD PRODUCTIONS, INC., HITMAN 2

PRODUCTIONS, INC., LHF PRODUCTIONS, INC., MILLENNIUM FUNDING, INC.,

MILLENNIUM IP, INC., MON, LLC, NIKOLA PRODUCTIONS, INC., OUTPOST

PRODUCTIONS, INC., RAMBO V PRODUCTIONS, INC., VENICE PI, LLC, VOLTAGE

HOLDINGS, LLC, WONDER ONE, LLC, DALLAS BUYERS CLUB, LLC; HANNIBAL

MEDIA, INC.; BADHOUSE STUDIOS, LLC; THE GUARD PRODUCTIONS, LTD; JOLT PRODUCTIONS, INC.; TIL PRODUCTIONS, INC.; and SCREEN MEDIA VENTURES, LLC ("Plaintiffs") file this Second Amended Complaint against Defendant GRANDE COMMUNICATIONS NETWORKS, LLC ("Defendant") and allege as follows:

## I.     NATURE OF THE ACTION

1.     This matter arises under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101, et seq. (the "Copyright Act").

2.     The Plaintiffs allege that Defendant is liable for injunctive relief pursuant to 17 U.S.C. § 512(j) and secondarily liable for copyright infringement in violation of 17 U.S.C. §§ 106 and 501 and violations of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202.

## II.     JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over this action pursuant to 17 U.S.C. §§ 101, et. seq., (the Copyright Act), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1338 (patents, copyrights, trademarks, and unfair competition).

4.     Defendant either resides in, solicits, transacts, or is doing business within this jurisdiction, and has committed unlawful and tortious acts both within and outside this jurisdiction with the full knowledge that its acts would cause injury in this jurisdiction.  As such, Defendant has sufficient contacts with this judicial district to permit the Court's exercise of personal jurisdiction over it.

5.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) - (c) because: (a) all or a substantial part of the events or omissions giving rise to the claims occurred in this District; and, (b) the Defendant resides, and therefore can be found, in this State.  Additionally, venue is proper in this District pursuant to 28 U.S.C. § 1400(a) (venue for copyright cases), because the

Defendant or Defendant's agents reside or may be found in this District.

## III.   PARTIES

### A.   The Plaintiffs

6.      The Plaintiffs are owners of the copyrights for the motion pictures ("Works"), respectively, as shown in Exhibit "A".

7.      Plaintiffs are producers of popular motion pictures currently available for sale online and in brick and mortar retail stores. Many of these critically acclaimed motion pictures were released in theaters throughout the world and feature A-list actors such as Samuel Jackson, Ryan Reynolds, Sylvester Stallone, Nicholas Cage, Angela Basset, Gerard Butler, Gary Oldman, Common, Linda Cardellini, Milla Jovovich, Pierce Brosnan, Dylan McDermott, Woody Harrelson, James Marsden and Rob Reiner, among others.

8.      Plaintiffs invested significant financial resources, time and effort in making and marketing these motion pictures based upon the expectation that they would have an opportunity to get a return on their investment from rentals and sales. Massive piracy of these motion pictures on the Internet via peer-to-peer networks by subscribers of Internet Service Providers ("ISPs") such as Defendant and the willful failure of the ISPs to deal with this issue despite clear notice of it have hindered this opportunity.

9.      AFTER II MOVIE, LLC is a Nevada limited liability company with its principal place of business at Las Vegas, NV.

10.      BODYGUARD PRODUCTIONS, INC. is a corporation organized under the laws of the State of Nevada, has a principal office in Nevada and is an affiliate of Millennium Media.

11.      HITMAN 2 PRODUCTIONS, INC. is a corporation organized under the laws of the State of Nevada, has a principal office in Nevada and is an affiliate of Millennium Media.

20-023M

12.     LHF PRODUCTIONS, INC. is a corporation organized under the laws of the State of Nevada, has a principal office in Nevada and is an affiliate of Millennium Media.

13.     MILLENNIUM FUNDING, INC. is a corporation organized under the laws of the State of Nevada, has a principal office in Nevada and is an affiliate of Millennium Media.

14.     MILLENNIUM IP, INC. is a corporation organized under the laws of the State of Nevada, has a principal office in Nevada and is an affiliate of Millennium Media.

15.     MON, LLC is a California limited liability company with its principal place of business at Beverly Hills, CA.

16.     NIKOLA PRODUCTIONS, INC. is a corporation organized under the laws of the State of Nevada, has a principal office in Nevada and is an affiliate of Millennium Media.

17.     OUTPOST PRODUCTIONS, INC. is a corporation organized under the laws of the State of Nevada, has a principal office in Nevada and is an affiliate of Millennium Media.

18.     RAMBO V PRODUCTIONS, INC. is a corporation organized under the laws of the State of Nevada, has a principal office in Nevada and is an affiliate of Millennium Media.

19.     VENICE PI, LLC is a California limited liability company with its principal place of business at Los Angeles, CA.

20.     VOLTAGE HOLDINGS, LLC is a limited liability company registered under the laws of the State of Nevada, has principal offices in Los Angeles, California and is an affiliate of Voltage Pictures.

21.     WONDER ONE, LLC is a Wyoming limited liability company with its principal place of business at Sherman Oaks, CA.

22.     DALLAS BUYERS CLUB, LLC is a Texas limited liability company with its principal place of business at The Woodlands, TX.

4

23.     HANNIBAL MEDIA, INC. is a California corporation with its principal place of business at 2045 Biscayne Blvd., #425 Miami, Florida.

24.     BADHOUSE STUDIOS, LLC is a Wyoming limited liability company with its principal place of business at West Hollywood, CA.

25.     THE GUARD PRODUCTIONS, LTD is a United Kingdom limited company with its principal place of business in London, England and is an affiliate of Millennium Media.

26.     JOLT PRODUCTIONS, INC. is a corporation organized under the laws of the State of Nevada, has a principal office in Nevada and is an affiliate of Millennium Media.

27.     TIL PRODUCTIONS, INC. is a corporation organized under the laws of the State of Nevada, has a principal office in Nevada and is an affiliate of Millennium Media.

28.     SCREEN MEDIA VENTURES, LLC is a Delaware limited liability company with its principal place of business at New York, NY.

## B.  The Defendant

29.     Defendant is a limited liability company organized and existing under the laws of the State of Delaware, with its headquarters at 401 Carlson Circle, San Marcos, TX 78666.

30.     Defendant is a member of The American Registry of Internet Numbers ("ARIN"), which is a nonprofit, member-based organization that manages and distributes Internet number resources such as Internet Protocol ("IP") addresses and Autonomous System Numbers.

31.     Defendant has an ARIN "Org" kind handle of C06137591 with full name "Grande Communications" and an address of 401 Carlson Circle, San Marcos, TX 78666.

32.     Defendant is a Texas ISP that provides transmitting, routing, or connection for material through a system or network controlled or operated by or for Defendant ("Internet

20-023M

service") to subscribers in Austin, Dallas, San Antonio, and other locations throughout the state of Texas.

33.     Many of Defendant's subscribers are motivated to subscribe to Grande's service because it allows them to download movies and other copyrighted content—including unauthorized content—as efficiently as possible.

34.     Accordingly, Defendant promotes its service to download and upload large amounts of content for subscribers for "downloading music, streaming movies and gaming". *See* Decl. of Joshua Lee at ¶¶6-7.

35.     In exchange for this service, Defendant charges its subscribers monthly fees ranging in price based on the speed of service.

36.     At all relevant times, Defendant knew that its subscribers routinely used its network for illegally downloading and uploading copyrighted works, particularly Plaintiffs' Works. As described below, Plaintiffs' agent sent over 5,500 notices styled per 17 U.S.C. §512(c)(3) to Defendant's designated abuse contact informing Defendant that many of its subscribers were actively utilizing their service to infringe Plaintiffs' Works. Those notices gave Defendant the specific identities of its infringing subscribers, referred to by their Internet Protocol ("IP") addresses, port numbers and time of infringement (to the second) and included the file title of the infringing copy being pirated with altered copyright management information. Nonetheless, Defendant persistently turned a blind eye to the massive infringement of Plaintiffs' Works occurring over its network.  Defendant allowed the illegal activity because it was popular with subscribers and acted as a draw to attract and retain new and existing subscribers. Defendant's subscribers, in turn, purchased more bandwidth and continued using Defendant's services to infringe Plaintiffs' Works.

20-023M

37.     Defendant knew that if it terminated or otherwise prevented repeat infringer subscribers from using its service to infringe, or made it less attractive for such use, Defendant would enroll fewer new subscribers, lose existing subscribers, and ultimately lose revenue. For those account holders and subscribers who wanted to download files illegally at faster speeds, Defendant obliged them in exchange for higher rates. In other words, the greater the bandwidth its subscribers required for pirating content, the more money Defendant made.

## IV.     JOINDER

38.     Pursuant to Fed. R. Civ. P. 20(a)(1), each of the Plaintiffs was properly joined because, as set forth in more detail below, the Plaintiffs assert that the infringements complained of herein by Defendant were part of a series of transactions and occurrences involving Defendant's subscribers, namely Defendant's subscribers widespread use of piracy applications to pirate Plaintiffs' Work and Defendant's failure to take any measures to stop its subscribers' infringing activities.

## V.     FACTUAL BACKGROUND

### A. The Plaintiffs Own the Copyright to the Work

39.     As shown in Exhibit "A", the Plaintiffs are the registered owners of the copyrights for the Works either through work for hire agreement, assignments and/or mergers.  The Works are the subjects of copyright registrations, and this action is brought pursuant to 17 U.S.C. § 411.

40.     Each of the Works contains original material that is copyrightable subject matter under the laws of the United States.

41.     The Works are currently offered for sale in commerce.

42.     Defendant had notice of Plaintiffs' rights through notices that were sent to Defendant's abuse contact.

7

20-023M

43.     Defendant also had notice of Plaintiffs rights through a letter from Plaintiffs' counsel.  See Exhibit "C".

**B. Defendant's subscribers Infringe Plaintiffs' Copyrights.**

44.     Defendant's subscribers use software such as BitTorrent to infringe Plaintiffs' exclusive rights of reproduction and distribution.

45.     BitTorrent is one of the most common peer-to-peer file sharing protocols (in other words, set of computer rules) used for distributing large amounts of data.

46.     The BitTorrent protocol's popularity stems from its ability to distribute a large file without creating a heavy load on the source computer and network. In short, to reduce the load on the source computer, rather than downloading a file from a single source computer (one computer directly connected to another), the BitTorrent protocol allows users to join a "swarm" of host computers to download and upload from each other simultaneously (one computer connected to numerous computers).

47.     In a report from January 2011, a survey conducted by the firm Envisional estimated that 11.4 percent of all Internet traffic involved the unauthorized distribution of non-pornographic copyrighted content via BitTorrent. *See* Envisional, "Technical report: An Estimate of Infringing Use of the Internet", January 2011, https://www.ics.uci.edu/~sjordan/courses/ics11/case_studies/Envisional-Internet_Usage-Jan2011-4.pdf [last accessed July 21, 2021].

48.     A more recent study by Sandvine determined that file-sharing accounts for 3 percent of global downstream and 22 percent of upstream traffic, with 97% of that traffic in turn being BitTorrent.  *See* Sandvine, "The Global Internet Phenomena Report", October 2018,

20-023M

https://www.sandvine.com/hubfs/downloads/phenomena/2018-phenomena-report.pdf [last accessed on May 27, 2021].

49. BitTorrent is overwhelmingly used for piracy. See David Price, "NetNames Piracy Analysis: Sizing the Piracy Universe", September 2013, pg. 18, http://creativefuture.org/wp-content/uploads/2016/01/netnames-sizing_piracy_universe-FULLreport-sept2013.pdf [last accessed on Oct. 1, 2021] ("Of all unique visitors to bittorrent portals in January 2013, it is estimated that 96.28% sought infringing content during the month…")

**1) The Initial Seed, Torrent, Hash and Tracker**

50. A BitTorrent user that wants to upload the new file, known as an "initial seeder," starts by creating a "torrent" descriptor file using, for example, the Client he or she installed onto his or her computer.

51. The initial user or seeder of a file used a process referred to as "ripping" to create a copy of motion pictures from either Blu-ray or legal streaming services.

52. The initial seeder often modifies the file title of the Work to include a wording such as "FGT", "RARBG" or "YTS" in the title of the torrent files and file copies in order to enhance a reputation for the quality of his or her torrent files and attract users to his or her piracy website.

53. The Client takes the target computer file, the "initial seed," here the copyrighted Work, and divides it into identically sized groups of bits known as "pieces."

54. The Client then gives each one of the computer file's pieces, in this case, pieces of the copyrighted Works, a random and unique alphanumeric identifier known as a "hash" and records these hash identifiers in the torrent file.

55.     When another peer later receives a particular piece, the hash identifier for that piece is compared to the hash identifier recorded in the torrent file for that piece to test that the piece is error-free. In this way, the hash identifier works like an electronic fingerprint to identify the source and origin of the piece and that the piece is authentic and uncorrupted.

56.     Torrent files also have an "announce" section, which specifies the URL (Uniform Resource Locator) of a "tracker," and an "info" section, containing (suggested) names for the files, their lengths, the piece length used, and the hash identifier for each piece, all of which are used by Clients on peer computers to verify the integrity of the data they receive.

57.     The "tracker" is a computer or set of computers that a torrent file specifies and to which the torrent file provides peers with the URL address(es).

58.     The tracker computer or computers direct a peer user's computer to other peer user's computers that have particular pieces of the file, here the copyrighted Work, on them and facilitates the exchange of data among the computers.

59.     Depending on the BitTorrent Client, a tracker can either be a dedicated computer (centralized tracking) or each peer can act as a tracker (decentralized tracking).

**2) Torrent Sites**

60.     "Torrent sites" are websites that index torrent files that are currently being made available for copying and distribution by people using the BitTorrent protocol.  There are numerous torrent websites including the notorious YTS, The Pirate Bay and RARBG websites. These websites were noted by the Office of the United States Trade Representative ("USTR") as examples of Notorious Markets defined as an online marketplace reportedly engaged in and facilitating substantial piracy. *See* USTR, 2014 Out-of-Cycle Review of Notorious Markets, Mar. 5, 2015, pg. 17, Available at https://ustr.gov/sites/default/files/2014%20Notorious

%20Markets%20List%20-%20Published_0.pdf [last accessed on May 7, 2021]; *see also* USTR, 2018 Out-of-Cycle Review of Notorious Markets, April 2019, pgs. 24, 27-28, Available at https://ustr.gov/sites/default/files/2018_Notorious_Markets_List.pdf [accessed on May 7, 2021].

**3) Defendant's subscribers access torrent sites from IP addresses provided by Defendant**

61.     Defendant's subscribers accessed torrent sites including the YTS website to upload and download Plaintiffs' copyrighted Work from IP addresses provided by Defendant.

62.     For example, an individual Grande subscriber registered for an account with the torrent website YTS using email address dizzle****@hotmail.com and used said account to access the torrent website YTS from IP address 66.196.3.46 assigned by Defendant and download a torrent file for pirating the Work *Angel Has Fallen* on Nov. 26, 2019.  *See* Exhibit "B" at pg. 2.

**4) Uploading and Downloading a Work Through a BitTorrent Swarm**

63.     Once the initial seeder has created a torrent and uploaded it onto one or more torrent sites, then other peers begin to download and upload the computer file to which the torrent is linked (here the copyrighted Works) using the BitTorrent protocol and BitTorrent Client that the peers installed on their computers.

64.     The BitTorrent protocol causes the initial seeder's computer to send different pieces of the computer file, here the copyrighted Work, to the peers seeking to download the computer file.  Defendants transmit the pieces to the peers.

65.     Once a peer receives a piece of the computer file, here a piece of the copyrighted Work, it starts transmitting that piece to the other peers.  Defendants transmit the pieces to the peers.

20-023M

66.     In this way, all of the peers and seeders are working together in what is called a "swarm."

67.     Here, the Defendant's subscribers participated in a swarm and directly interacted and communicated with other members of the swarm through digital handshakes, the passing along of computer instructions, uploading and downloading, and by other types of transmissions, Plaintiffs' Works.

68.     Defendant distributed the subscribers' transmissions to other members of the swarm.

69.     In this way, and by way of example only, one initial seeder can create a torrent that breaks a movie up into hundreds or thousands of pieces saved in the form of a computer file, like the Works here, upload the torrent onto a torrent site, and deliver a different piece of the copyrighted Work to each of the peers. The recipient peers then automatically begin delivering the piece they just received to the other peers in the same swarm.

70.     Once a peer has downloaded the full file, the BitTorrent Client reassembles the pieces and the peer is able to view the movie. Also, once a peer has downloaded the full file, that peer becomes known as "an additional seed," because it continues to distribute the torrent file, here the copyrighted Work.

71.     For example, the individual who used email address dizzle****@hotmail.com shared copies of the Work *Angel Has Fallen* under the file name "Angel Has Fallen (2019) [BluRay] [720p] [YTS.LT]" multiple times on Nov. 26, 2021 from IP address 66.196.3.46.

**5) The Plaintiffs' Computer Investigator Identified Defendant's IP Addresses as Participants in Swarms That Were Distributing Plaintiffs' Copyrighted Works.**

72. The Plaintiffs engaged Maverickeye UG ("MEU") to identify the IP addresses that are being used by those people that are using the BitTorrent protocol and the Internet to reproduce, distribute, display or perform the Plaintiff's copyrighted Work.

73. MEU used forensic software to enable the scanning of peer-to-peer networks for the presence of infringing transactions.

74. MEU extracted the resulting data emanating from the investigation, reviewed the evidence logs, and isolated the transactions and the IP addresses associated therewith for the files identified by the SHA-1 hash value of the Unique Hash Number.

75. MEU logged information including the IP addresses, Unique Hash Numbers, and hit dates that show that Defendant's subscribers distributed pieces of the Plaintiffs' copyrighted Works identified by the Unique Hash Number.

76. Defendant's subscribers' computers used the identified IP addresses to connect to the investigative server in order to transmit a full copy, or a portion thereof, of a digital media file identified by the Unique Hash Number.

77. MEU analyzed each BitTorrent "piece" distributed by the IP addresses and verified that re-assemblage of the pieces using a BitTorrent Client results in a fully playable digital motion picture of the Works.

78. MEU viewed the Works side-by-side with the digital media file that correlates to the Unique Hash Number and determined that they were identical, strikingly similar or substantially similar.

79. For example, MEU logged records showing that the Work *Angel Has Fallen* was shared under the file name "Angel Has Fallen (2019) [BluRay] [720p] [YTS.LT]" multiple times on Nov. 26, 2021 from IP address 66.196.3.46.

***C. The Operator of the YTS website confirmed that at least one of Defendant's subscribers' accounts was used to download torrent files for copying copyright protected Works from the YTS website.***

80.　　The YTS website operator maintained records of activity of registered user accounts. *See* Exhibit "B" at pg. 3 (Certificate of Authenticity).

81.　　As shown in Exhibit "B", the records include the email address of the registered user account, the torrent files the registered account downloaded, the IP address from where the registered user accessed the YTS website, and the time.

***D. Defendant's subscribers distributed copies of Plaintiffs' Works.***

82.　　Defendant's subscribers distributed at least pieces of each of Plaintiffs' Works over network connections provided by Defendants to other peers in the Swarm.

83.　　Defendant's subscriber at IP address 66.196.3.46 distributed multiple copies of the Works *Hellboy* and *Angel Has Fallen*.

84.　　Defendant's subscriber at IP address 24.155.189.11 distributed <u>thousands</u> of copies of the Work *Rambo V: Last Blood*.

***E. Defendant's subscribers knew the Copyright Management Information included in the files they distributed to other peers had been removed or altered without the authority of Plaintiffs.***

85.　　A legitimate file copy of each of the Works includes copyright management information ("CMI") indicating the title.

86.　　The initial seeders of the infringing file copies of Plaintiffs' Works added wording to the file titles to "brand" the quality of piracy files he or she released and attract further traffic to his or her website.

14

87.     For example, the initial seeder of the infringing file copies of the Works Dallas Buyers Club and London Has Fallen added the wording "RARBG" to the file titles to brand the quality of piracy files he or she released and attract further traffic to the RARBG website.

88.     The word RARBG is not included in the file title of legitimate copies or streams of the Works.  The initial seeder of the Work altered the title to falsely include the words "RARBG" in the CMI.

89.     The initial seeder of the infringing file copies of the Work Angel Has Fallen added the wording "YTS" to the file titles to brand the quality of piracy files he or she released and attract further traffic to the YTS website.

90.     The word YTS is not included in the file title of legitimate copies or streams of the Works.  The initial seeder of the Work altered the title to falsely include the words "YTS" in the CMI.

91.     The file copies Defendant's subscribers distributed to other peers in the Swarm included the altered CMI in the file title.

92.     Defendant's subscribers knew that the website or BitTorrent Client from which they obtained their torrent files was distributing illegal copies of the Work.

93.     In many cases, Defendant's subscribers had registered accounts with these piracy websites.

94.     Defendant's subscribers knew that the entity included in the false or altered CMI such as YTS or RARBG was not the author of Plaintiffs' Works.

95.     Defendant's subscribers knew that the entity included in the false or altered CMI such as YTS or RARBG was not a licensed distributor of Plaintiffs' Works.  Indeed, the YTS website includes a warning to this effect.

20-023M

96.     Defendant's subscribers knew that the false or altered CMI that included words such as YTS and RARBG in the file names was false.

97.     Defendant's subscribers knew that the false or altered CMI in the titles would induce, enable, facilitate or conceal infringements of the Works when they distributed the false CMI, altered CMI or the Work including the false or altered CMI.

98.     Namely, Defendant's subscribers knew that other recipients would see the file titles and use the altered CMI to go to the website such as YTS from where the torrent files originated to obtain unlicensed copies of the Work.

99.     By providing the altered CMI to others, Defendant's subscribers induced, enabled and facilitated further infringements of the Work.

100.    MEU determined that Defendant's subscribers distributed Plaintiffs' Works with altered CMI as shown, for example, in Exhibit "D".

101.    MEU determined that Defendant's subscribers distributed over 175 different modified CMI with file copies of the Works.

***F. Defendant had knowledge that its subscribers were infringing Plaintiffs' Works and distributing file copies of the Works with altered CMI but continued to provide service to their subscribers.***

102.    Plaintiffs engaged MEU to generate Notices of infringements ("Notices") styled per 17 U.S.C. §512(c)(3) of the Digital Millennium Copyright Act ("DMCA") to be sent to service providers of IP addresses where MEU confirmed infringement of copyright protected content.

103.    Each Notice included at least the name of the copyright owner, the title of the Work, the manner by which it was infringed, the infringing file name which includes the altered Copyright Management Information, the IP address and port number where infringement was

16

confirmed and the time of infringement down to the second. *See* Exhibit "C" (Attached Exhibit 1) (excerpt below).

> Protocol: BITTORRENT
> Infringed Work: Angel Has Fallen
> Infringing FileName: Angel Has Fallen (2019) [WEBRip] [720p] [YTS.LT]
> Infringing FileSize: 1139772927
> Infringer's IP Address: 24.155.189.11
> Infringer's Port: 54689
> Initial Infringement Timestamp: 2020-01-28 23:32:10

104. MEU determines the proper service provider assigned the IP addresses at issue from publicly available information from ARIN.

105. MEU determines the proper abuse contact email address for the service provider assigned the IP addresses from the ARIN records, DMCA designated directory and Defendants' website.

106. Plaintiffs' agent sends the Notice to the abuse contact email address.

107. Defendant is required to update the WHOIS records for the IP addresses it reassigns or reallocates per its registration agreement with ARIN.

108. Plaintiffs' agent has sent over 5,800 Notices to Defendant concerning infringements of copyright protected Works including Plaintiffs' at IP addresses assigned to Defendants from ARIN.

109. For example, Plaintiffs' agent sent over 1000 Notices to Defendant concerning infringement of the motion picture *The Hitman's Bodyguard* at IP addresses assigned to Defendant from ARIN.

110. For example, Plaintiffs' agent sent over 500 Notices to Defendant concerning infringement of the motion pictures *I Feel Pretty* and *Hellboy* at IP addresses assigned to Defendant from ARIN.

20-023M

111.    For example, Plaintiffs' agent sent over 450 Notices to Defendant concerning infringement of the motion picture *Angel Has Fallen* at IP addresses assigned to Defendants from ARIN.

112.    For example, Plaintiffs' agent sent over 350 Notices to Defendant concerning infringement of the motion picture *Rambo V: Last Blood* at IP addresses assigned to Defendants from ARIN.

113.    For example, Plaintiffs' agent sent over 300 Notices to Defendants concerning infringement of the motion picture *Ava* at IP addresses assigned to Defendants from ARIN.

114.    Plaintiffs' agent sent over 75 Notices to Defendant concerning observed infringements at each of IP addresses 24.155.189.11 and 24.155.79.34.

115.    Upon information and belief, other rightsholders had similar Notices sent to Defendant concerning infringing activity at IP addresses assigned to Defendant from ARIN.

116.    Defendant failed to terminate the subscribers of the accounts associated with these IP addresses or take any meaningful action in response to these Notices.

117.    Defendant often failed to even forward the Notices to their subscribers.

118.    Defendant continued to provide service to the subscribers despite knowledge that its subscribers were using the service to engage and facilitate massive piracy of copyright protected Works including the Copyright Plaintiffs' and distribute altered CMI.

119.    Plaintiffs' counsel sent a letter to Defendant detailing these concerns and pointing to detailed examples of prolific piracy behavior by subscribers on Oct. 15, 2020.  *See* Exhibit "C".

120.    Defendant completely ignored the letter and, upon information and belief, continued to provide service to even the subscribers engaged in prolific piracy detailed in the letter.

20-023M

121. Defendant's failure to terminate or take any meaningful action against its subscribers resulted in a cascade of piracy of Plaintiffs' Works.

**G. Defendant controls the conduct of its subscribers.**

122. Defendant can terminate the accounts of their subscribers at any time.

123. Upon information and belief, Defendant promptly terminates subscriber accounts for committing any prohibited or abusive activities or failing to pay for the Service. *See* Decl. of Joshua Lee at ¶8.

124. Defendant explicitly states that it may take responsive action to violations of its Acceptable Use Policy including "temporary or permanent removal of content…filtering of Internet transmissions, and the immediate suspension or termination of all or any portion of the Service". *Id.*

125. Defendant monitors and/or controls the content that its subscribers access or which websites they visit.

126. Defendant has the ability to determine whether its subscriber's service is being used for operating file-sharing programs such as BitTorrent and whether the subscriber's service is being used to distribute copies of copyright protected content.

127. Defendant explicitly states to its customers that "it reserves the right at any time to monitor bandwidth, usage, transmissions, and content…" *Id.*

**H. Defendant does not have a safe harbor from liability.**

128. As part of the DMCA, Congress created a safe harbor that limits the liability of a service provider for copyright infringement when their involvement is limited to, among other things, "transmitting, routing, or providing connections for, material through a system or network

20-023M

controlled or operated by or for the service provider." 17 U.S.C. § 512(a). To benefit from this safe harbor, however, an ISP must demonstrate that it "has adopted and reasonably implemented...a policy that provides for the termination in appropriate circumstances of subscribers...who are repeat infringers." 17 U.S.C. § 512(i)(1)(A).

129.    Defendant has not adopted or reasonably implemented a policy of terminating repeat infringers.

130.    Plaintiffs' agent has sent over 5,800 Notices to Defendants concerning infringements at IP addresses Defendants publish as assigned to them.

131.    Defendant failed to terminate the accounts and/or take any meaningful actions against their subscribers in response to the Notices consistent with a reasonably implemented policy for termination of subscribers and account holders of the service provider's system or network who are repeat infringers necessary to support a safe harbor from liability ("policy").

132.    Indeed, Defendant has failed to follow its own purported policy. *See* https://mygrande.com/PDFs/GRANDE-DMCA-Policy-01082021.pdf [last accessed on Oct. 19, 2021].

133.    Below are examples of Defendant's failure to reasonably implement the requisite Policy.

134.    Defendant states on its website that, "After receiving Notifications regarding repeated infringement through unauthorized file sharing, including peer-to-peer file sharing, relating to a specific subscriber account, Grande Communications Networks, LLC will take action to prevent repeated infringement. Such action may include temporary or permanent termination of the subscriber account." *See* https://mygrande.com/PDFs/GRANDE-DMCA-Policy-01082021.pdf [last accessed on Oct. 19, 2021].

135.    However, Defendant failed to terminate the account and/or take any meaningful action against their subscribers at IP addresses 24.155.189.11 and 24.155.79.34 even after Plaintiffs' agent sent over 75 Notices for each of these IP addresses to Defendant and Plaintiffs' counsel sent a letter (Exhibit "C").

136.    Defendant now argues that Notices should discuss, reference, or attach supporting evidence so that Defendant can verify allegations of infringement in their Motion to Dismiss [Doc. #12] although their purported policy has no such requirements.

137.    Defendant did not contact Plaintiffs' agent to ask for further information to verify or confirm the piracy detailed in the Notices.

138.    Upon information and belief, Defendant did not forward most if not all of the Notices to its subscribers.

139.    Defendant did not forward any counter-notifications from its subscribers to Plaintiffs' agent in response to the Notices.

140.    Defendant's conduct renders it ineligible for safe harbor immunity from copyright liability under the DMCA.

**I. The copyright infringements arise from Defendant's advertisements.**

141.    At all relevant times, Defendant's subscribers have paid substantial subscription fees for access to Defendants' high-speed Internet network.

142.    Defendant offers a tiered pricing structure so its subscribers can have even higher downloading and uploading speed for a higher monthly fee. *See* Decl. of Joshua Lee at ¶3.

143.    Defendant advertises the highest tier for $64.99 for 940 Mbps. *See Id.* at ¶3.

144.    As recently as Aug. 9, 2021, Defendant advertised the ability to use this tier of service to "…download movies". Id. at ¶4.

21

145.     Defendant's subscribers are motivated to become subscribers from Defendants' advertisements.

146.     Defendant's subscribers are motivated to become subscribers from the knowledge of Defendants' practice of ignoring notices of infringements or failing to take any meaningful action.

## VI. FIRST CLAIM FOR RELIEF
### (Contributory Copyright Infringement)

147.     Plaintiffs re-allege and incorporate by reference the allegations contained in each of the foregoing paragraphs.

148.     Through its activities, Defendant knowingly and intentionally took steps that are substantially certain to result in direct infringement of Copyright Plaintiffs' Copyrighted Works, and that have resulted in such direct infringement in violation of Plaintiffs' copyrights.

149.     Despite Defendant's knowledge that its subscribers were using its service to engage in widescale copyright infringements, Defendant has failed to take reasonable steps to minimize the infringing capabilities of its service.

150.     Defendants' actions of providing transmission, routing, or connections for said copies of the Works to its subscribers is a direct and proximate cause of the infringements of Plaintiffs' Works.

151.     Defendant is liable as a contributory copyright infringer for the infringing acts of its subscribers.  Defendant has actual and constructive knowledge of the infringing activity of its subscribers.  Defendant knowingly caused and otherwise materially contributed to these unauthorized distributions and reproductions of Plaintiffs' Works.

152.     Defendant's contributory infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

22

153.    By engaging in the contributory infringement alleged in this Second Amended Complaint, Defendant deprived not only the producers of the Works from income that could have been derived when the respective film was shown in public theaters and offered for sale or rental, but also all persons involved in the production and marketing of this film, numerous owners of local theaters and retail outlets and their employees, and, ultimately, the local economy. Defendant's misconduct therefore offends public policy.

154.    Plaintiffs are entitled to elect to recover from Defendant statutory damages for its violations of 17 U.S.C. § 1202.

155.     Plaintiffs are further entitled to costs and reasonable attorneys' fees.

156.    As a direct and proximate result of the infringement to which Defendant knowingly and materially contributes and contributed, Plaintiffs are entitled to injunctive or other equitable relief as provided by, for example, 17 U.S.C. §§ 512(j)(1)(A) and (B) including but not limited to an order restraining the Defendant from providing access to infringing material or activity residing at movie piracy websites including but not limited to: (a) YTS; (b) Piratebay; (c) Rarbg; and (d) 1337x; and/or taking reasonable steps to block access to said movie piracy websites.

## VII. SECOND CLAIM FOR RELIEF
### (Application for Injunctive Relief)

157.    Plaintiffs re-allege and incorporate by reference the allegations contained in each of the foregoing paragraphs.

158.    Defendant has actual knowledge of its subscribers' infringements of Plaintiffs' exclusive rights under the Copyright Act by its subscribers' use of notorious piracy websites that are of foreign origin to pirate Plaintiffs' Works.

159.    Despite having said actual knowledge, Defendant continues to provide services to the subscribers.

23

20-023M

160. Defendant's actions of providing transmission, routing, or connections for said copies of the Works to its subscribers is a direct and proximate cause of the infringements of Plaintiffs' Works.

161. Defendant had actual or constructive knowledge of infringement of Plaintiffs' exclusive rights under the Copyright Act by its subscribers. Defendant knowingly and materially contributed to such infringing activity.

162. Plaintiffs suffer irreparable harm from Defendant's failure to take even simple actions to stop further piracy of their Works by Defendant's subscribers.

163. Defendant's subscribers are depriving Plaintiffs of their exclusive rights to control how, when, and to whom they will disseminate their Copyrighted Works.

164. Defendant's subscribers' distribution of freely available infringing copies of the Works inevitably and irreparably undermines the legitimate market in which consumers can purchase access to the same works.

165. Defendant's subscribers' distribution of freely available infringing copies of the Works threaten harm to Plaintiffs' relationships and goodwill with authorized licensees.

166. The hardship Plaintiffs will face without the injunction prayed for outweighs any harm to the Defendant's interests in profiting from allowing its subscribers to use its service to pirate Plaintiffs' Works.

167. The public has a compelling interest in protecting copyright owners' marketable rights to their works, particularly from foreign websites that profit from widespread piracy of US copyright protected Works.

168. As a direct and proximate result of the infringement to which Defendant knowingly and materially contribute and contributed, Plaintiffs are entitled to injunctive or other equitable

20-023M

relief as provided by, for example, 17 U.S.C. §§ 512(j)(1)(A) and (B) including but not limited to an order restraining the Defendant from providing access to infringing material or activity residing at movie piracy websites including but not limited to: (a) YTS; (b) Piratebay; (c) Rarbg; and (d) 1337x; and/or taking reasonable steps to block access to said movie piracy websites.

## VIII. THIRD CLAIM FOR RELIEF
### (Secondary Liability for Digital Millennium Copyright Act Violations)

169.    Plaintiffs re-allege and incorporate by reference the allegations contained in each of the foregoing paragraphs.

170.    Defendant's subscribers knowingly and with the intent to induce, enable, facilitate, or conceal infringement of the Plaintiffs' copyright protected Works, distributed copyright management information ("CMI") that falsely included wording such as "YTS" and "RARBG" in violation of 17 U.S.C. § 1202(a)(2).

171.    Defendant's subscribers knowingly and with the intent to induce, enable, facilitate, or conceal infringement of the copyright protected Works distributed CMI that falsely included the wording such as "YTS" and "RARBG" or in violation of 17 U.S.C. § 1202(a)(2).

172.    Defendant's subscribers knowingly and with the intent to induce, enable, facilitate, or conceal infringement of the copyright protected Works distributed CMI that falsely included the wording such as "YTS" and "RARBG" in violation of 17 U.S.C. § 1202(a)(2).

173.    Defendant's subscribers, without the authority of Plaintiffs or the law, distributed removed or altered CMI knowing that the CMI had been removed or altered to include wording such as "RARBG" and "YTS" without the authority of the Plaintiffs and knowing, or having reasonable grounds to know, that it will induce, enable, facilitate, or conceal infringement of Plaintiffs' Copyright protected Works in violation of 17 U.S.C. § 1202(b)(2).

174.    Defendant's subscribers, without the authority of Plaintiffs or the law, distributed

25

Plaintiffs' Copyright protected Works knowing that the CMI had been removed or altered to include wording such as "RARBG" or "YTS", and knowing, or having reasonable grounds to know, that it will induce, enable, facilitate, or conceal infringement of the copyright protected Works in violation of 17 U.S.C. § 1202(b)(3).

175.    Particularly, Defendant's subscribers knew that the CMI in the file names of the pieces of the Work had been altered to include wording such as "RARBG", "YTS" or "FGT".

176.    Particularly, the Defendant's subscribers distributed the file names that included CMI that had been altered to include the wording "YTS" or "RARBG".

177.    Defendant's subscribers knew that the wording "YTS", "RARBG" or "FGT" originated from notorious movie piracy website.

178.    Defendant's subscribers' acts constitute violations under the Digital Millennium Copyright Act ("DMCA violation"), 17 U.S.C. § 1202.

179.    Through their conduct, Defendant knowingly and intentionally induced, enticed, persuaded, and caused its subscribers to constitute DMCA violations.

180.    Through its activities, Defendant knowingly and intentionally takes or took steps that are substantially certain to result in its subscribers committing DMCA violations, and that have resulted in DMCA violations.

181.    Despite Defendant's knowledge that its subscribers use its service to commit DMCA violations, Defendant has failed to take reasonable steps to minimize the capabilities of its service to facilitate DMCA violation.

182.    Defendant is secondarily liable for the DMCA violations of its subscribers. Defendant has actual and constructive knowledge of its subscribers' DMCA violations. Defendant knowingly caused and otherwise materially contributed to these DMCA violations.

20-023M

183.    Defendant is vicariously liable for the DMCA violations of its subscribers. Defendant has the right and ability to supervise and control the DMCA violations that occur through the use of its service, and at all relevant times has derived a direct financial benefit from the DMCA violations complained of herein.  Defendant has refused to take any meaningful action to prevent the widespread DMCA violations by its subscribers.  Indeed, the ability of Defendant's subscribers to use Defendant's service to engage in widespread DMCA violations while pirating content without having their services terminated despite multiple notices being sent to Defendant acts as a powerful draw for subscribers of Defendant's service.  Defendant is therefore vicariously liable for the DMCA violations.

184.    Plaintiffs are entitled to an injunction to prevent Defendant from engaging in and/or contributing to further violations of 17 U.S.C. § 1202.

185.    Plaintiffs are entitled to recover from Defendant the actual damages suffered by Plaintiffs and any profits Defendant has obtained as a result of its wrongful acts that are not taken into account in computing the actual damages. Plaintiffs are currently unable to ascertain the full extent of the profits Defendant has realized by its violations of 17 U.S.C. § 1202.

186.    Plaintiffs are entitled to elect to recover from Defendant statutory damages for their violations of 17 U.S.C. § 1202.

187.    Plaintiffs are further entitled to costs and reasonable attorneys' fees.

## IX. PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs respectfully requests that this Court:

(A) permanently enjoin Defendant from continuing to contribute to infringements of the Plaintiffs' copyrighted Works and DMCA violations;

(B) order Defendant to adopt a policy that provides for the prompt suspension of service

27

for subscribers for which Defendants receive more than three unique notices of infringements of copyright protected Works within 72 hours without receiving a counter notification from said subscriber;

(C) order Defendant to block subscribers from accessing notorious piracy websites of foreign origin including but not limited to: (a) YTS; (b) Piratebay; (c) Rarbg; and (d) 1337x that are listed in the annual trade report of Notorious Foreign Markets published by the United States Government on all networks under their control to prevent further pirating of Plaintiffs' Works via the BitTorrent protocol;

(D) order the Defendant to disclose to Plaintiffs the identifications of the subscribers who used and use Defendant's service to infringe Plaintiffs' Works on an ongoing basis after said subscribers are provided notice as required by 47 U.S.C. § 551;

(E) award the Plaintiffs their actual damages from the copyright infringements and Defendant's profits in such amount as may be found; alternatively, at Plaintiffs' election, for maximum statutory damages of $150,000/copyright for the Works (or a total of at least $11,850,000 for 79 copyrights) pursuant to 17 U.S.C. § 504(a) and (c) against Defendant;

(F) award the Plaintiffs their actual damages from the DMCA violations and Defendant's profits in such amount as may be found; or, in the alternative, at Plaintiff's election, for maximum statutory damages of $25,000 for each DMCA violation pursuant to 17 U.S.C. § 1203(c) for a total of at least $4,975,000 for contributing to the more than 199 violations of and/or vicariously violating 17 U.S.C. § 1202;.

(G) award the Plaintiffs their reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505 and/or 17 U.S.C. § 1203(b)(5); and

(H) grant the Plaintiffs any and all other and further relief that this Court deems just and

28

20-023M

proper.

## X. JURY DEMAND

The Plaintiffs hereby demand a trial by jury on all issues properly triable by jury.

DATED: Kailua-Kona, Hawaii, May 17, 2022.


Respectfully submitted,


/s/ Kerry S. Culpepper
Kerry S. Culpepper HI Bar No. 9837
CULPEPPER IP, LLLC
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawaii 96740
Telephone: (808) 464-4047
Facsimile: (202) 204-5181
E-Mail: kculpepper@culpepperip.com
Attorney for Plaintiffs

/s/ Joanne Bui
/s/ Gregory Dovel
Joanne Bui CA State Bar No. 340378 (*pro hac vice*)
Gregory Dovel CA State Bar No. 135387
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
Telephone: 310-656-7066
Facsimile: 310-657-7069
Email: greg@dovel.com
Email: joey@dovel.com
Attorneys for Plaintiffs MILLENNIUM FUNDING, INC., MILLENNIUM IP, INC.,
BODYGUARD PRODUCTIONS, INC., HITMAN 2 PRODUCTIONS, INC., NIKOLA
PRODUCTIONS, INC., OUTPOST PRODUCTIONS, INC., RAMBO V PRODUCTIONS,
INC., THE GUARD PRODUCTIONS, LTD; JOLT PRODUCTIONS, INC., and TIL
PRODUCTIONS, INC.

20-023M

# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

Civil Action No. <u>1:21-cv-709</u>

After II Movie, LLC, et al.,

      Plaintiffs,

v.

Grande Communications Networks, LLC,

      Defendant.

---

## DECLARATION OF JOSHUA LEE

---

JOSHUA LEE, hereby declares under penalty of law that the following is true and correct:

1.  I am an associate attorney with the law firm Culpepper IP, LLLC in Kailua Kona, HI.  Culpepper IP, LLLC represents the Plaintiffs in various actions throughout the United States.

2.  I have personal knowledge of the matters stated herein.

3.  On August 9, 2021, I visited Defendant's website "https://www.mygrande.com".  Below is a true and accurate screenshot of the website:





4. On August 9, 2021, I visited Defendant's website "https://www.mygrande.com/portal/articles/8732". Below is a true and accurate screenshot of the website:

> ⊖ **Does the time-of-day impact my Internet speed?**
>
> Yes. Sometimes, a lot of people are online surfing the Internet, updating their social network, downloading movies, gaming or chatting with friends/family. Grande's fiber optic network is designed to provide all customers the best Internet experience possible, but during certain times of the day, all Internet connections are more heavily used. When there is a lot of Internet traffic in general, you will see temporary periods where your connection may slow down. Typically, you will see this during the peak hours of usage between 7 PM and 11 PM. Generally, this congestion exists on the destination website or server you are trying to reach.

5.

6. On August 9, 2021, I visited Defendant's website "https://www.mygrande.com/internet/speed-test". Below is a true and accurate screenshot of the website:



7.

8. On or around July 21, 2021, I accessed Defendant's Internet Acceptable Use Policy at "https://mygrande.com/PDFs/Grande_Acceptable_Use_Policy_10-31-13.pdf" and Customer Terms and Conditions at "https://mygrande.com/policies-agreements/customer-terms-and-conditions". Below are true and accurate screenshots:

**VIOLATION OF ACCEPTABLE USE POLICY**

Grande Communications does not routinely monitor the activity of Service accounts for violation of this Acceptable Use Policy. However, in our efforts to promote good citizenship within the Internet community, we will respond appropriately if we become aware of inappropriate use of our Service. Although Grande Communications has no obligation to monitor the Service and/or the network, Grande Communications and its suppliers reserve the right at any time to monitor bandwidth, usage, transmissions, and content from time to time to operate the Service; to identify violations of this Policy; and/or to protect the network, the Service and Grande Communications users.

Grande Communications prefers to advise customers of inappropriate behavior and any necessary corrective action. However, if the Service is used in a way that Grande Communications or its suppliers, in their sole discretion, believe violate this Acceptable Use Policy, Grande Communications or its suppliers may take any responsive actions they deem appropriate. These actions include, but are not limited to, temporary or permanent removal of content, cancellation of newsgroup posts, filtering of Internet transmissions, and the immediate suspension or termination of all or any portion of the Service. Neither Grande Communications nor its affiliates, suppliers or agents, will have any liability for any these responsive actions. The above described actions are not Grande Communications' exclusive remedies and Grande Communications may take any other legal or technical action it deems appropriate.



**PROTECTING OUR NETWORK:**

Grande reserves the right to manage its network and Services in any manner it deems appropriate. Any action or email from any Grande user that causes what Grande determines is an undue burden on the network or personnel of Grande is prohibited and may subject the user to termination of Grande Service without notice, recourse or refund.

**CERTAIN CUSTOMER OBLIGATIONS:**

By accepting Service from Grande, you agree to the terms and conditions of use regarding Grande Services that are stated in this Agreement and any changes Grande may make from time to time, and you agree to pay each monthly bill from Grande on or before the date specified in the bill. An administrative late charge will be assessed if the bill is not paid by the due date, and Service will be terminated if payment is not received by the stated due date of the next month's bill (or as otherwise provided by law). All equipment of any kind provided by Grande remains the sole property of Grande, unless sold to you. You agree to notify Grande when moving from the Premises and you are responsible for the charges for monthly Service until you notify Grande in writing of a desire to terminate Service and have returned any Grande Equipment in good condition. Failure to return Grande Equipment within ten (10) days after receiving notice in writing from Grande is a violation of Section 31.04 of the Texas Penal Code. Telephone Services provided by Grande are subject to the terms and conditions under Grande's tariffs on file with the applicable state and federal regulatory authority, the Phone Service Terms and Conditions (which may be found at **www.mygrande.com/PDFs/Phone_SRV_Terms_Conditions_0919.pdf**), and as posted on Grande's website at **www.mygrande.com**. Internet and Cable TV Services provided by Grande are subject to the terms and conditions of use stated in this Agreement, the Internet Acceptable Use Policy (which may be found at **www.mygrande.com/PDFs/Grande_Acceptable_Use_Policy_10-31-13.pdf**), as well as the Basic Conditions of Service Regarding Cable TV & Internet Service (which may be found at **www.mygrande.com/PDFs/TV_Internet_SRV_Terms_Conditions.pdf**), as they may be changed from time to time by Grande with notice to you, to any applicable software license and to applicable local, state and federal law and regulations. Please read the foregoing terms and conditions applicable to Grande Services, as well as any additional policies and other information made available to you by visiting **www.mygrande.com/policies-agreements**, as they provide useful information about your rights and responsibilities related to your use of our Services, including, without limitation, your commitment to resolve any controversy or dispute between us respecting your use of the Services or any equipment associated therewith through binding arbitration.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: Kailua-Kona, Hawaii, August 13, 2021.

Joshua Lee
CULPEPPER IP, LLLC
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawai'i 96740

**Exhibit "A"**

| No. | OWNER | MOTION PICTURE | Certificate Number |
|---|---|---|---|
| 1 | Millennium Funding, Inc. (previously 211 Productions, Inc.) | *211* | PAu003905278, PA0002132686 |
| 2 | After II Movie, LLC | *After We Collided* | PAu004014087, PAu003988168 |
| 3 | Millennium Funding, Inc. (previously Fallen Production, Inc.) | *Angel Has Fallen* | PA0002197434, PAu003917080 |
| 4 | Millennium Funding, Inc. (previously Automata Productions, Inc.) | *Automata* | PA0001923090, PAu003712705 |
| 5 | Voltage Holdings, LLC (previously Eve Nevada, LLC) | *Ava* | PA0002235557, PAu003943693 |
| 6 | Millennium IP, Inc. (previously Before I go Productions, Inc.) | *Before I Go to Sleep* | PAu003753175, PA0001939571 |
| 7 | Millennium Funding, Inc. (previously UN4 Productions, Inc.) | *Boyka: Undisputed IV* | PA0002031176, PAu003798816 |
| 8 | Millennium Funding, Inc. (previously Criminal Productions, Inc.) | *Criminal* | PA0001984029, PAu003772954 |
| 9 | Wonder One, LLC | *Disturbing the Peace* | PAu003991009 |
| 10 | Voltage Holdings, LLC (formerly Wicked Nevada, LLC) | *Extremely Wicked, Shockingly Vile and Evil* | PAu003953148, PAu003905674 |
| 11 | Millennium Funding, Inc. (formerly HB Productions, Inc.) | *Hellboy* | PA0002176664 |
| 12 | Millennium IP, Inc. (formerly Homefront Productions, Inc.) | *Homefront* | PA0001877609 |
| 13 | Millennium Funding, Inc. (formerly Hunter Killer Productions, Inc.) | *Hunter Killer* | PA0002147752, PAu003868948 |

| 14 | Voltage Holdings, LLC (formerly TBV Productions, LLC) | *I Feel Pretty* | PAu003896491, PAu003886973 |
|---|---|---|---|
| 15 | LHF Productions, Inc. | *London Has Fallen* | PA0001982831, PAu003789521 |
| 16 | Millennium Funding, Inc. (formerly ME2 Productions, Inc.) | *Mechanic: Resurrection* | PA0001998057 |
| 17 | Venice PI, LLC | *Once Upon a Time in Venice* | PA0002039391, TXu001968528 |
| 18 | Rambo V Productions, Inc. | *Rambo V: Last Blood* | PA0002202971 |
| 19 | Millennium Funding, Inc. (formerly September Productions, Inc.) | *Septembers of Shiraz* | PA0002038711, PAu003740540 |
| 20 | MON, LLC | *Singularity* | PAu003848900 |
| 21 | Voltage Holdings, LLC (formerly Status Update LLC) | *Status Update* | PAu003867210, PAu003850446 |
| 22 | Millennium Funding, Inc. (formerly Survivor Productions, Inc.) | *Survivor* | PA0001956191, PAu003749574 |
| 23 | Nikola Productions, Inc. | *Tesla* | PAu003998966 |
| 24 | Wonder One, LLC | *The 2nd* | PAu004025415 |
| 25 | Bodyguard Productions, Inc. | *The Hitman's Bodyguard* | PAu003844508, PAu003849477 |
| 26 | Hitman Two Productions, Inc. | *The Hitman's Wife's Bodyguard* | PAu4084868, PAu4005787 |
| 27 | Millennium Funding, Inc. | *The Humbling* | PAu03760198 |
| 28 | Outpost Productions, Inc. | *The Outpost* | PA0002258273, PA0002263248 |
| 29 | Voltage Holdings, LLC (formerly Definition Delaware LLC) | *The Professor and the Madman* | PAu003920383, PAu003919285 |
| 30 | MON, LLC | *Welcome Home* | PAu004016506, PAu003900818, PAu003900815 |
| 31 | Voltage Holdings, LLC (formerly Headhunter, LLC) | *A Family Man* | PA0002039392, TXu001967832, TXu001374031 |
| 32 | Dallas Buyers Club, | *Dallas Buyers* | PA0001873195 |

| | | *Club* | |
|---|---|---|---|
| 33 | Voltage Holdings, LLC (formerly Fathers & Daughters Nevada, LLC) | *Fathers and Daughters* | PAu003762811, PAu003713364 |
| 34 | Voltage Holdings, LLC (formerly Cobbler Nevada, LLC) | *Cobbler* | PAu003744688, PAu003742177 |
| 35 | Voltage Holdings, LLC (previously She Fighter Nevada, LLC) | *Lady Bloodfight* | PA0002056253 |
| 36 | Badhouse Studios, LLC/ Hannibal Media, Inc. | *Larceny* | PAu003852034, PAu003892760 |
| 37 | Voltage Holdings LLC (previously I.T. Productions, LLC) | *I.T.* | PAu003801126 |
| 38 | Voltage Holdings, LLC (previously PTG Nevada, LLC) | *Pay the Ghost* | PA0001957914, TXu001920050 |
| 39 | Voltage Holdings, LLC (previously Countryman Nevada, LLC) | *The Necessary Death of Charlie Countryman* | PAu003663305, TXu001808502 |
| 40 | Voltage Holdings LLC (previously Clear Skies Nevada, LLC) | *Good Kill* | PAu003762377, PAu003726363 |
| 41 | The Guard Productions, LTD | *The Protégé (previously The Asset)* | PA2346338 PA4051267 |
| 42 | Jolt Productions, Inc. | *Jolt* | PAu3988197 |
| 43 | Til Productions, Inc. | *Till Death* | PAu4085282 |
| 44 | Screen Media Ventures, LLC | *The Hurricane Heist* | PA0002147321 |
| 45 | Screen Media Ventures, LLC | *The Last Full Measure* | PAu003981677 |

**Exhibit "B"**

Angel Has Fallen, hash B7330F69794B69D7BD009FEFE4035F4D4F833B6C, 720p, 1.06 GB





email: dizzle1982@hotmail.com

last used ip: 66.196.3.46
date downloaded: 2019-11-26 01:08:31
IP Address city: Odessa, state: Texas, zip code: 79762
125. ------------------------------



## CERTIFICATE OF AUTHENTICITY

Senthil Segaran hereby declares under penalty of laws of the United States, India and the United Kingdom that the following is true and correct.

1.    I am the sole shareholder, sole director and custodian of the records for Techmodo Limited.  Each of the records attached hereto is the original or duplicate of an original record in the custody of Techmodo Limited.

2.    Such records were made at or near the time by — or from information transmitted by — someone with knowledge of these matters.

3.    Such records are kept in the course of a regularly conducted activity of business.

I declare under the penalty of perjury of the laws of India and the United Kingdom that the foregoing is true and correct.

DATED: London, England, September __1__, 2020.

_____
Senthil Segaran

Certificate of Authenticity - Segaran



**Culpepper IP**

# CULPEPPER IP, LLLC

ATTORNEY AT LAW

75-170 HUALALAI ROAD, SUITE B204
KAILUA-KONA, HAWAII 96740

TEL: (808) 464-4047
FAX: (202) 204-5181

WWW.CULPEPPERIP.COM

PATENTS, TRADEMARKS & COPYRIGHTS

KERRY S. CULPEPPER *

* ADMITTED TO PRACTICE IN VIRGINIA, HAWAI'I
AND BEFORE THE USPTO

Via Certified Mail and E-mail < legal@mygrande.com, dmca@mygrande.com>

October 15, 2020

Grande Communications Network, LLC
401 Carlson Circle
San Marcos, TX 78666

CORPORATION SERVICE COMPANY DBA CSC - LAWYERS INCO
Registered Agent for Grande Communications Network, LLC
211 E. 7TH STREET, SUITE 620
AUSTIN, TX 78701

Re:  Massive Copyright Infringement at Grande Internet Protocol ("IP") addresses

My Reference: 20-023M
Case Number: 19-cv-169-LEK-KJM (District of Hawaii)

Dear Sir or Madam,

As explained below, I am writing to you regarding the Internet service Grande
Communications Network, LLC ("Grande") provides to subscribers including but not limited to
the IP addresses ("subscribers") mentioned below.  Please note that these IP addresses are shown
merely to illustrate the problem.  As explained more fully below, this issue extends to over 2500
Grande subscribers.

My law firm represents the owners of the copyright protected motion pictures including
but not limited to those shown below:

| NO. | OWNER | MOTION PICTURE |
|-----|-------|----------------|
| 1 | Venice PI, LLC | *Once Upon a Time in Venice* |

**Exhibit "C"**

Page 2

| 2 | Dallas Buyers Club, LLC | *Dallas Buyers Club* |
|---|---|---|
| 3 | Clear Skies Nevada, LCC/Voltage Holdings, LLC | *Good Kill* |
| 4 | I am Wrath Production, Inc. | *I am Wrath* |
| 5 | Automata Productions, Inc. | *Automata* |
| 6 | POW Nevada, LLC/Voltage Holdings, LLC | *Revolt* |
| 7 | Headhunter, LLC/Voltage Holdings, LLC | *A Family Man* |
| 8 | Badhouse Studios, LLC | *Larceny* |
| 9 | She Fighter Nevada, LLC/Voltage Holdings, LLC | *Lady Bloodfight* |
| 10 | Millennium Funding, Inc. | *Mechanic: Resurrection* |
| 11 | Bodyguard Productions, Inc. | *The Hitman's Bodyguard* |
| 12 | Cobbler Nevada, LLC/Voltage Holdings, LLC | *The Cobbler* |
| 13 | UN4 Productions, Inc. | *Boyka: Undisputed IV* |
| 14 | HB Productions, Inc. | *Hellboy* |
| 15 | Fallen Productions, Inc. | *Angel Has Fallen* |
| 16 | LHF Productions, Inc. | *London Has Fallen* |
| 17 | Rambo V Productions, Inc. | *Rambo V: Last Blood* |
| 18 | Eve Nevada, LLC | *Ava* |

Each of the motion pictures is an original work of art that was produced and marketed at great effort and expense of the owner.

On behalf of some of these owners, my law firm filed a lawsuit here in Hawaii (1:19-cv-169; 1:19-cv-389) against, among others, Senthil Segaran and his company Techmodo Limited for direct, contributory and intentional inducing copyright infringement of their motion pictures by operating movie piracy websites under the name "YTS".

Page 3

We have determined that many of your subscribers have used the YTS websites to repeatedly infringe the copyrights in my clients' motion pictures. Moreover, we have determined that our owners' agents have sent over 5500 notices styled per the Digital Millennium Copyright Action ("DMCA") to Grande concerning over 2,500 IP addresses associated with confirmed infringing activity. However, it appears that Grande has failed to terminate any repeat infringers or take any meaningful actions against these subscribers in response to these notices. The number of notices sent at five IP addresses is shown below to illustrate Grande's lack of any meaningful action. The Internet service of none of these accounts was terminated despite Grande receiving over 50 DMCA notices.

| IP | Notices Sent |
|---|---|
| 24.155.189.11 | 80 |
| 24.155.79.34 | 78 |
| 24.155.131.50 | 67 |
| 65.36.17.90 | 67 |
| 65.36.127.227 | 56 |

To further illustrate a concrete example of the damage done to right owners, please refer to the activity at the subscriber at IP address 24.155.189.11. Between November of 2019 and February 6, 2019, this subscriber shared *thousands* of copies of our client's motion picture *Rambo V: Last Blood*. Even though our clients' agent had sent Grande 80 notices during the same time period Grande failed to respond to take any meaningful manner to prevent continuing infringing activity.

Nearly all of the file titles of the infringing copies distributed by Grande's subscribers (and thereby also Grande) have had the copyright management information ("CMI") such as the title of the Work modified or altered to falsely include a reference to a piracy website. For example, the infringing file my clients' agent told Grande about in the Notices for the IP address 24.155.189.11 has the title: "Angel Has Fallen (2019) [WEBRip] [720p] [YTS.LT]". The CMI has been modified/altered to falsely refer to the notorious piracy website YTS in violation of 17 U.S.C. §1202 ("DMCA violations"). My clients did not provide file titles that promote movie piracy websites or piracy groups.

We suspect that other rightsholders have sent Grande Notices concerning the same exact IP addresses at issue here. For example, we noticed that in *UMG RECORDINGS, et al. v. GRANDE COMMUNICATIONS NETWORKS, LLC*, Grande filed a motion *in limini* requesting that all evidence of Grande's failure to terminate the accounts of repeat offenders be excluded because the Court had already granted summary judgment in favor of Plaintiffs on Grande's DMCA safe harbor defense. *See* [Doc. #325].

Page 4

***Grande does not have a safe harbor from liability for Copyright Infringement***

      The DMCA provides a safe harbor for qualified services providers from liability from copyright infringement. However, a requirement for safe harbor is that the service provider reasonably implement, and inform subscribers and account holders of the service provider's system or network of, a policy that provides for the ***termination*** in appropriate circumstances of subscribers and account holders of the service provider's system or network who are repeat infringers. *See* 17 USC § 512(i)(1)(A). Accordingly, Grande fails to qualify for the safe harbor because Grande has not terminated the subscriber accounts despite the multiple notifications sent by my clients' agents. As Grande is well aware, such was the conclusion in *UMG RECORDINGS, et al. v. GRANDE COMMUNICATIONS NETWORKS, LLC.*

      Accordingly, my clients and I believe that Grande is possibly secondarily liable for these subscribers' infringements of my clients' copyrights in violation of federal law under the Copyright Act, 17 USC §501 and the DMCA violations under 17 U.S.C. §1202. Remedies available to my clients include: An injunction against further infringement; statutory damages of up to $150,000/motion picture; statutory damages up to $25,000 per DMCA violation (*see* 17 USC. § 1203(c)) and costs and attorney's fees.

      Nonetheless, my clients would like to resolve this issue outside of litigation if possible. To do so, we request that: (1) Grande agrees to terminate all Internet service to the accounts for which the agents have sent more than three DMCA notices including the accounts discussed in this letter; (2) Grande agrees to take the appropriate action to terminate subscriber accounts in response to all further copyright notifications received from my clients' agent; (3) Grande agrees to pay a portion of my clients' damages; (4) Grande agrees to provide subscriber identification information for IP addresses including but not limited to those shown above and others for which my clients' rights have been infringed at no production charge; and (5) Grande agrees to block notorious piracy sites such as YTS.MX, 1337x.to, thepiratebay.org and their proxy sites.

      I propose Grande and my clients enter into a confidentiality and tolling agreement so that we can discuss resolving this matter. Please let me know if Grande is interested in such a discussion by November 16, 2020. My clients would like to resolve this matter amicably but will consider any and all legal action necessary to protect their valuable intellectual property rights under federal and state law.

Sincerely,

Kerry S. Culpepper

kculpepper@culpepperip.com

Attachment: Exhibit "1"

| | |
|---|---|
| **From:** | notice@notices.copyrightmanagementservicesltd.com |
| **To:** | dmca@mygrande.com |
| **Cc:** | ccbk@notices.copyrightmanagementservicesltd.com |
| **Subject:** | Notice of Claimed Infringement [Case No. 40473049340] |
| **Date:** | Wednesday, January 29, 2020 2:13:05 AM |

-----BEGIN PGP SIGNED MESSAGE-----
Hash: SHA256

Notice of Claimed Infringement

Notice ID: 40473049340
Notice Date: 2020-01-29 12:13:05

Dear Sir or Madam:

This message is sent on behalf of Fallen Productions, Inc..

Under penalty of perjury, I assert that Copyright Management Services, Ltd. (CMS) is authorized to act on behalf of the owner of the exclusive copyrights that are alleged to be infringed herein.

Fallen Productions, Inc. owns the copyrights to the movie Angel Has Fallen. The unauthorized download and distribution of this file by your IP address constitutes copyright infringement.

Please see below details for the infringements:

Protocol: BITTORRENT
Infringed Work: Angel Has Fallen
Infringing FileName: Angel Has Fallen (2019) [WEBRip] [720p] [YTS.LT]
Infringing FileSize: 1139772927
Infringer's IP Address: 24.155.189.11
Infringer's Port: 54689
Initial Infringement Timestamp: 2020-01-28 23:32:10

And, you're also creating a security risk on your computers, devices and networks when you download unauthorized movies or allow others to do so from your Internet connection.

We respectfully ask that you stop infringing and redistributing Fallen Productions, Inc. copyright protected content, and take the proper steps to secure your Internet so that others do not infringe and redistribute our content as well.

We have a good faith belief that use of the copyrighted material detailed above is not authorized by the copyright owner, its agent, or the law. In addition, we have a good faith subjective belief that the use does not constitute fair use. The information in this notice is accurate and we state, under penalty of perjury, that we are authorized to act on behalf of the owner of the copyright that is allegedly infringed. This letter is not a complete statement of Fallen Productions, Inc.'s rights in connection with this matter, and nothing contained herein constitutes an express or implied wavier of any rights or remedies of Fallen Productions, Inc. in connection with this matter, all of which are expressly reserved.

We appreciate your assistance and thank you for your cooperation in this matter.

Respectfully,

Catherine Hyde

Exhibit "1"

**Exhibit "D"**

| No. | MOTION PICTURE | FILE COPIES WITH ALTERED CMI |
|---|---|---|
| 1 | *211* | 211 (2018) [WEBRip] [720p] [YTS.AM]<br>211 (2018) [BluRay] [720p] [YTS.AM]<br>211.2018.720p.BRRip.x264.MkvCage.WS.mkv<br>211.2018.WEB-DL.x264-FGT<br>211 (2018) [BluRay] [1080p] [YTS.AM]<br>211.2018.720p.WEB-DL.MkvCage.WS.mkv<br>211 (2018) [WEBRip] [1080p] [YTS.AM] |
| 2 | *After We Collided* | After We Collided (2020) [720p] [WEBRip] [YTS.MX]<br>After We Collided (2020) [1080p] [BluRay] [5.1] [YTS.MX]<br>After.We.Collided.2020.1080p.BluRay.x264.DTS-HD.MA.5.1-FGT<br>After We Collided (2020) [1080p] [WEBRip] [YTS.MX] |
| 3 | *Angel Has Fallen* | Angel.Has.Fallen.2019.WEB-DL.XviD.MP3-FGT<br>Angel Has Fallen (2019) [BluRay] [1080p] [YTS.LT]<br>Angel.Has.Fallen.2019.BDRip.x264-AAA[rarbg]<br>Angel.Has.Fallen.2019.1080p.BluRay.H264.AAC-RARBG<br>Angel.Has.Fallen.2019.1080p.WEBRip.x264-RARBG<br>Angel Has Fallen (2019) [BluRay] [720p] [YTS.LT]<br>Angel Has Fallen (2019) [WEBRip] [720p] [YTS.LT]<br>Angel Has Fallen (2019) [WEBRip] [1080p] [YTS.LT] |
| 4 | *Automata* | Automata 2014 BDRip 1080p x264 AC3 English Castellano URBiN4HD Eng Spa Subs<br>Automata.2014.1080p.BluRay.x265-RARBG<br>Automata.2013.1080p.BluRay.H264.AAC-RARBG |
| 5 | *Ava* | Ava (2020) [1080p] [BluRay] [5.1] [YTS.MX]<br>Ava (2020) [2160p] [4K] [WEB] [5.1] [YTS.MX]<br>Ava.2020.1080p.WEBRip.x264-RARBG<br>Ava (2020) [720p] [WEBRip] [YTS.MX]<br>Ava (2020) [720p] [BluRay] [YTS.MX]<br>Ava.2020.1080p.BluRay.H264.AAC-RARBG<br>Ava (2020) [1080p] [WEBRip] [5.1] [YTS.MX] |
| 6 | *Before I Go to Sleep* | |
| 7 | *Boyka: Undisputed* | Boyka Undisputed IV (2016) [1080p] [YTS.AG] |

| | IV | Boyka.Undisputed.2016.1080p.WEBRip.AAC.2.0.x264-FGT[EtHD]<br>Boyka.Undisputed.2016.1080p.BRRip.6CH.MkvCage.mkv<br>Boyka.Undisputed.2016.1080p.BluRay.H264.AAC-RARBG<br>Boyka Undisputed IV (2016) [YTS.AG]<br>Boyka.Undisputed.2016.BRRip.XviD.MP3-RARBG<br>Boyka.Undisputed.2016.720p.BluRay.H264.AAC-RARBG |
|---|---|---|
| 8 | *Criminal* | Criminal 2016 1080p BluRay x264 DTS-JYK<br>Criminal.2016.720p.BluRay.H264.AAC-RARBG<br>Criminal (2016) [1080p] [YTS.AG]<br>Criminal.2016.720p.BRRip.999MB.MkvCage.mkv |
| 9 | *Day of the Dead: Bloodline* | Day.of.the.Dead.Bloodline.2018.720p.BluRay.H264.AAC-RARBG<br>Day.of.the.Dead.Bloodline.2018.1080p.BluRay.x264-GUACAMOLE[rarbg]<br>Day Of The Dead Bloodline (2018) [1080p] [YTS.AG]<br>Day.of.the.Dead.Bloodline.2018.720p.WEB-DL.700MB.MkvCage.mkv<br>Day Of The Dead Bloodline (2018) [YTS.AG]<br>Day.of.the.Dead.Bloodline.2018.WEB-DL.x264-FGT<br>Day.of.the.Dead.Bloodline.2018.1080p.BluRay.H264.AAC-RARBG<br>Day.of.the.Dead.Bloodline.2018.1080p.WEB-DL.DD5.1.H264-FGT |
| 10 | *Disturbing the Peace* | Disturbing The Peace (2020) [WEBRip] [1080p] [YTS.LT]<br>Disturbing The Peace (2020) [1080p] [BluRay] [5.1] [YTS.MX]<br>Disturbing The Peace (2020) [WEBRip] [720p] [YTS.LT]<br>Disturbing The Peace (2020) [720p] [BluRay] [YTS.MX] |
| 11 | *Extremely Wicked, Shockingly Vile and Evil* | Extremely.Wicked.Shockingly.Evil.and.Vile.2019.1080p.WEBRip.x264-RARBG<br>Extremely Wicked, Shockingly Evil, And Vile (2019) [WEBRip] [720p] [YTS.AM]<br>Extremely.Wicked.Shockingly.Evil.And.Vile.2019.720p.WEB.X264-METCON[rarbg]<br>Extremely Wicked, Shockingly Evil And Vile (2019) [BluRay] [1080p] [YTS.LT]<br>Extremely Wicked, Shockingly Evil, And Vile (2019) [WEBRip] [1080p] [YTS.AM]<br>Extremely Wicked, Shockingly Evil And Vile (2019) [BluRay] [720p] [YTS.LT] |
| 12 | *Hellboy* | Hellboy.2019.KORSUB.HDRip.XviD.MP3-STUTTERSHIT<br>Hellboy (2019) [WEBRip] [1080p] [YTS.LT] |

| | | |
|---|---|---|
| | | Hellboy.2019.1080p.KORSUB.HDRip.x264.AAC2.0-STUTTERSHIT<br>Hellboy (2019) [BluRay] [720p] [YTS.LT]<br>Hellboy (2019) [WEBRip] [720p] [YTS.LT]<br>Hellboy.2019.1080p.WEBRip.x264-RARBG<br>Hellboy (2019) [BluRay] [1080p] [YTS.LT]<br>Hellboy.2019.720p.HC.HDRip.x264-MkvCage.Com.mkv |
| 13 | *Homefront* | |
| 14 | *Hunter Killer* | Hunter.Killer.2018.1080p.BRRip.x264.MkvCage.ws.mkv<br>Hunter.Killer.2018.720p.WEB-DL.XviD.AC3-FGT<br>Hunter.Killer.2018.1080p.KORSUB.HDRip.x264.AAC2.0-STUTTERSHIT<br>Hunter Killer (2018) [BluRay] [1080p] [YTS.AM]<br>Hunter.Killer.2018.720p.BluRay.H264.AAC-RARBG<br>Hunter.Killer.2018.1080p.BluRay.H264.AAC-RARBG<br>Hunter.Killer.2018.BDRip.x264-DRONES[rarbg]<br>Hunter Killer (2018) [WEBRip] [1080p] [YTS.AM]<br>Hunter Killer (2018) [BluRay] [720p] [YTS.AM]<br>Hunter Killer (2018) [WEBRip] [720p] [YTS.AM] |
| 15 | *I Feel Pretty* | I Feel Pretty (2018) [WEBRip] [1080p] [YTS.AM]<br>I Feel Pretty (2018) [BluRay] [720p] [YTS.AM]<br>I Feel Pretty (2018) [720p] [BluRay] [YTS.ME]<br>I.Feel.Pretty.2018.720p.WEB-DL.MkvCage.WS.mkv<br>I.Feel.Pretty.2018.1080p.BluRay.x265-RARBG<br>I Feel Pretty (2018) [BluRay] [1080p] [YTS.AM]<br>I Feel Pretty (2018) [WEBRip] [720p] [YTS.AM] |
| 16 | *Kill Chain* | Kill Chain (2019) [BluRay] [720p] [YTS.LT]<br>Kill Chain (2019) [WEBRip] [1080p] [YTS.LT]<br>Kill.Chain.2019.1080p.WEBRip.x264-RARBG<br>Kill.Chain.2019.1080p.BluRay.H264.AAC-RARBG<br>Kill Chain (2019) [WEBRip] [720p] [YTS.LT]<br>Kill Chain (2019) [BluRay] [1080p] [YTS.LT] |
| 17 | *London Has Fallen* | London.Has.Fallen.2016.720p.BluRay.H264.AAC-RARBG<br>London.Has.Fallen.2016.1080p.BluRay.x265-RARBG<br>London.Has.Fallen.2016.2160p.BluRay.REMUX.HEVC.DTS-HD.MA.5.1-FGT<br>London.Has.Fallen.2016.1080p.BluRay.H264.AAC-RARBG<br>London Has Fallen (2016) [YTS.AG]<br>London Has Fallen (2016) [1080p] [YTS.AG]<br>London.Has.Fallen.2016.1080p.BluRay.x264-DRONES[rarbg] |

| 18 | Mechanic: Resurrection | Mechanic Resurrection 2016 1080p BluRay x264 DTS-JYK<br>Mechanic Resurrection (2016) [YTS.AG]<br>Mechanic Resurrection (2016) [1080p] [YTS.AG]<br>Mechanic.Resurrection.2016.1080p.BluRay.H264.AAC-RARBG<br>Mechanic.Resurrection.2016.HDRip.1080p.DUAL-BLACKOUT-WWW.THEPIRATEBRAZIL.ORG |
|----|----|----|
| 19 | Once Upon a Time in Venice | Once.Upon.a.Time.in.Venice.2017.1080p.WEB-DL.DD5.1.H264-FGT<br>Once.Upon.a.Time.in.Venice.2017.BRRip.XviD.AC3-RARBG<br>Once.Upon.a.Time.in.Venice.2017.1080p.BluRay.H264.AAC-RARBG<br>Once Upon A Time In Venice (2017) [YTS.AG]<br>Once.Upon.a.Time.in.Venice.2017.720p.WEB-DL.750MB.MkvCage.mkv<br>Once Upon A Time In Venice (2017) [1080p] [YTS.AG]<br>Once.Upon.a.Time.in.Venice.2017.720p.BRRip.850MB.MkvCage.mkv |
| 20 | Rambo V: Last Blood | Rambo.Last.Blood.2019.Extended.Bluray.1080p.DTS-HD.x264-GrymLegacy<br>Rambo.Last.Blood.2019.1080p.BDRip.X264.AC3-EVO[TGx]<br>Rambo.Last.Blood.2019.KORSUB.HDRip.XviD.MP3-STUTTERSHIT<br>Rambo.Last.Blood.2019.EXTENDED.1080p.BluRay.H264.AAC-RARBG<br>Rambo.Last.Blood.2019.1080p.BluRay.H264.AAC-RARBG<br>Rambo.Last.Blood.2019.1080p.WEBRip.x264-RARBG<br>Rambo.Last.Blood.2019.EXTENDED.720p.BluRay.H264.AAC-RARBG<br>Rambo Last Blood (2019) [BluRay] [720p] [YTS.LT]<br>Rambo Last Blood (2019) [BluRay] [1080p] [YTS.LT] |
| 21 | Septembers of Shiraz | |
| 22 | Singularity | |
| 23 | Status Update | Status.Update.2018.720p.WEB-DL.MkvCage.mkv<br>Status Update (2018) [BluRay] [720p] [YTS.AM]<br>Status.Update.2018.1080p.WEB-DL.DD5.1.H.264-FGT<br>Status Update (2018) [WEBRip] [1080p] [YTS.AM]<br>Status Update (2018) [WEBRip] [720p] [YTS.AM] |
| 24 | Survivor | Survivor.2015.HDRip.XviD.AC3-EVO |
| 25 | Tesla | Tesla.2020.1080p.WEBRip.x265-RARBG<br>Tesla (2020) [1080p] [BluRay] [5.1] [YTS.MX]<br>Tesla (2020) [1080p] [WEBRip] [5.1] [YTS.MX]<br>Tesla (2020) [720p] [WEBRip] [YTS.MX] |

| | | |
|---|---|---|
| | | Tesla.2020.1080p.WEBRip.x264-RARBG |
| 26 | *The 2nd* | The 2nd (2020) [720p] [BluRay] [YTS.MX]<br>The.2nd.2020.1080p.BluRay.H264.AAC-RARBG<br>The 2nd (2020) [1080p] [BluRay] [5.1] [YTS.MX] |
| 27 | *The Hitman's Bodyguard* | The.Hitmans.Bodyguard.2017.720p.WEBRip.XviD.AC3-FGT<br>The.Hitmans.Bodyguard.2017.1080p.WEB-DL.6CH.MkvCage.mkv<br>The.Hitmans.Bodyguard.2017.INTERNAL.1080p.BluRay.X264-AMIABLE[rarbg]<br>The Hitman's Bodyguard (2017) [YTS.AG]<br>The.Hitmans.BodyGuard.2017.720p.BluRay.H264.AAC-RARBG<br>The.Hitmans.Bodyguard.2017.BDRip.X264-AMIABLE[rarbg]<br>The Hitmans Bodyguard (2017) [1080p] [YTS.PE]<br>The.Hitmans.Bodyguard.2017.INTERNAL.720p.BluRay.X264-AMIABLE[rarbg]<br>The Hitman's Bodyguard (2017) [1080p] [YTS.AG]<br>The.Hitman's.BodyGuard.2017.720p.BRRip.1GB.MkvCage.mkv |
| 28 | *The Hitman's Wife's Bodyguard* | The Hitmans Wifes Bodyguard (2021) [720p] [BluRay] [YTS.MX]<br>The.Hitmans.Wifes.Bodyguard.2021.EXTENDED.1080p.WEBRip.x265-RARBG<br>The Hitmans Wifes Bodyguard (2021) [1080p] [BluRay] [5.1] [YTS.MX]<br>Hitmans.Wifes.Bodyguard.2021.720p.BluRay.x264-VETO[rarbg]<br>The Hitmans Wifes Bodyguard (2021) [720p] [WEBRip] [YTS.MX]<br>The Hitmans Wifes Bodyguard (2021) [2160p] [4K] [BluRay] [5.1] [YTS.MX]<br>The Hitmans Wifes Bodyguard (2021) [1080p] [WEBRip] [5.1] [YTS.MX]<br>The.Hitmans.Wifes.Bodyguard.2021.EXTENDED.1080p.WEBRip.x264-RARBG |
| 29 | *The Humbling* | The.Humbling.2014.BRRip.XviD.MP3-XVID |
| 30 | *The Outpost* | The Outpost (2020) [1080p] [WEBRip] [5.1] [YTS.MX]<br>The Outpost (2020) [2160p] [4K] [WEB] [5.1] [YTS.MX]<br>The.Outpost.2020.BDRip.x264-YOL0W[rarbg]<br>The.Outpost.2020.1080p.WEBRip.x264-RARBG<br>The Outpost (2020) [720p] [BluRay] [YTS.MX]<br>The Outpost (2020) [720p] [WEBRip] [YTS.MX]<br>The Outpost (2020) [1080p] [BluRay] [5.1] [YTS.MX] |

| 31 | *The Professor and the Madman* | The Professor And The Madman (2019) [BluRay] [720p] [YTS.LT]<br>The Professor And The Madman (2019) [WEBRip] [1080p] [YTS.AM]<br>The.Professor.and.the.Madman.2019.WEB-DL.x264-FGT<br>The Professor And The Madman (2019) [WEBRip] [720p] [YTS.AM]<br>The Professor And The Madman (2019) [BluRay] [1080p] [YTS.LT]<br>The.Professor.and.the.Madman.2019.1080p.WEB-DL.DD5.1.H264-FGT |
|---|---|---|
| 32 | *Welcome Home* | Welcome Home (2018) [BluRay] [1080p] [YTS.AM]<br>Welcome Home (2018) [BluRay] [720p] [YTS.AM]<br>Welcome.Home.2018.1080p.WEB-DL.DD5.1.H264-FGT<br>Welcome.Home.2018.WEB-DL.XviD.AC3-FGT |
| 33 | *American Heist* | ArabRip-American.Heist.2014.1080p.BluRay-By_Olman<br>American Heist 2014 1080p BRRip x264 DTS-JYK |
| 34 | *A Family Man* | A.Family.Man.2017.720p.WEB-DL.900MB.MkvCage.mkv<br>A Family Man (2016) [1080P] [FOXM.TO]<br>A.Family.Man.2016.1080p.BluRay.H264.AAC-RARBG<br>A.Family.Man.2016.720p.BRRip.950MB.MkvCage.mkv<br>A Family Man 2017 1080p WEBRip 1.5 GB – iExTV |
| 35 | *Dallas Buyers Club* | Dallas.Buyers.Club.2013.720p.BluRay.H264.AAC-RARBG<br>Dallas.Buyers.Club.2013.1080p.BluRay.H264.AAC-RARBG<br>Dallas Buyers Club 2013 BluRay 1080p x264 DD5.1 FLiCKSiCK |
| 36 | *Vengeance: A Love Story* | Vengeance.A.Love.Story.2017.720p.BRRip.900MB.MkvCage.mkv<br>Vengeance.A.Love.Story.2017.1080p.BluRay.H264.AAC-RARBG<br>Vengeance A Love Story (2017) [1080p] [YTS.AG]<br>Vengeance A Love Story (2017) [YTS.AG] |
| 37 | *I Am Wrath* | I Am Wrath (2016) [1080p] [YTS.AG]<br>I Am Wrath (2016) [YTS.AG]<br>I.Am.Wrath.2016.1080p.BRRip.x264.AAC-ETRG |
| 38 | *USS Indianapolis: Men of Courage* | USS.Indianapolis.Men.of.Courage.2016.HDRip.XviD.AC3-EVO<br>USS.Indianapolis.Men.of.Courage.2016.1080p.BluRay.H264.AAC-RARBG<br>USS.Indianapolis.Men.of.Courage.2016.720p.BRRip.x264.AAC-ETRG |

| 39 | *Fathers and Daughters* | Fathers.and.Daughters.2015.BRRip.XViD-ETRG<br>Fathers And Daughters (2015) [1080p] [YTS.AG]<br>Fathers.and.Daughters.2015.720p.BRRip.x264.AAC-ETRG |
|----|----|----|
| 40 | *Cobbler* | The.Cobbler.2014.HDRip.XviD.AC3-EVO |
| 41 | *Lady Bloodfight* | Lady.Bloodfight.2016.BluRay.720p.750MB.Ganool.mkv<br>Lady Bloodfight (2016) 1080p BrRip x264 – VPPV<br>Lady Bloodfight 2016 1080p BluRay x264 DTS-JYK |
| 42 | *Larceny* | Larceny 2017 720p WEBRip 650 MB – iExTV |
| 43 | *I.T.* | I.T. (2016) [1080p] [YTS.AG]<br>I.T.2016.HDRip.XViD-ETRG |
| 44 | *Pay the Ghost* | Pay.the.Ghost.2015.720p.BluRay.750MB.ShAaNiG.mkv<br>Pay.the.Ghost.2015.HDRip.XViD-ETRG |
| 45 | *The Necessary Death of Charlie Countryman* | The.Necessary.Death.Of.Charlie.Countryman.2013.1080p.BluRay.H264.AAC-RARBG |
| 46 | *Stoic fka Acts of Vengeance* | Acts of Vengeance 2017 720p WEBRip 650 MB – iExTV<br>Acts of Vengeance 2017 720p BRRip 650 MB – iExTV |
| 47 | *Good Kill* | |